IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

BROOKE TAYLOR a/k/a BROOKE JOHNSON,
JESSE GOLDEN a/k/a JESSICA GOLDEN,
JESSA HINTON a/k/a JESSICA HINTON,
KIMBERLY COZZENS, LAURIE ANN                CASE NO. 17-cv-62262-KMM
YOUNG, MASHA LUND, URSULA MAYES,
SANDRA VALENCIA, SARA UNDERWOOD,
TIFFANY TOTH a/k/a TIFFANY TOTH GRAY,
ARIANNY CELESTE LOPEZ, CIELO JEAN
GIBSON, DESSIE MITCHESON, and IRINA
VORONINA

      Plaintiffs,

vs.

TRAPEZE MANAGEMENT, LLC d/b/a
TRAPEZE FORT LAUDERDALE d/b/a
TRAPEZE and TRAPEZE OF GEORGIA, INC.
d/b/a TRAPEZE ATLANTA d/b/a TRAPEZE,

      Defendants.

_____/

## MOTION TO DISMISS FOR VIOLATION OF RULE 8

## AND

## MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION

      COME NOW, the Defendants, TRAPEZE MANAGEMENT, LLC and TRAPEZE OF GEORGIA, INC., by and through their undersigned attorneys, and hereby file their Motions directed to Plaintiffs' Complaint (Doc. 1) and say:

      1.    While framed in multiple counts, the essence of the Plaintiffs' Complaint is that the Defendants posted a photograph of each Plaintiff on their Facebook pages and other social media accounts without permission. The Plaintiffs claim that they would ordinarily be entitled to

a licensing fee in connection with their photographs and that the use of their respective images by these particular Defendants has the potential to negatively impact their careers. Identical claims by these same models have cropped up throughout the State. *See, e.g.*, Gibson v. White's Place, LLC, No. 3:16-CV-392-J-32JBT, 2017 WL 4169690 (M.D. Fla. Sept. 20, 2017); Gibson v. Resort at Paradise Lakes, LLC, No. 8:16-CV-791-T-36AAS, 2017 WL 3421532 (M.D. Fla. Aug. 9, 2017); Lancaster v. Bottle Club, LLC, No. 8:17-CV-634-T-33JSS, 2017 WL 3008434 (M.D. Fla. July 14, 2017).

2.      The Complaint is defective under Rule 8 because it is unnecessarily prolix and complicated. The Complaint asserts eight counts and repeats them verbatim for each of the fourteen (14) Plaintiffs. The result is a Complaint which is fourteen times longer than it needs to be. Several Courts have required these same Plaintiffs to consolidate the duplicative counts in pleadings which are essentially identical to the Complaint filed in this action. *See*, Edmondson v. Caliente Resorts, LLC, No. 8:15-CV-2672-T-23TBM, 2016 WL 1756070 at *5 (M.D. Fla. May 3, 2016); Gibson v. White's Place, *supra* at *4.

3.      The Complaint fails to state a cause of action for the reasons outlined here and described in more detail in the Memorandum below:

A.      This case must be brought under Title 17, the Copyright Act, and is not cognizable under the Lanham Act. *See*, 17 U.S.C. §301.

B.      All of the state law supplemental claims are preempted by the Copyright Act.

C.      Count V does not state a claim for deceptive and unfair trade practices brought under Chapter 501, Fla.Stat. because Plaintiffs are not "consumers" as defined by the statute. At

best, Plaintiffs are competitors of the Defendants and their alleged loss did not occur in the context of a consumer transaction. *See*, Gibson v. Resort at Paradise Lakes, *supra* at *3–6.

    D.    Count VI, based on §772.11, Fla.Stat., Florida's civil theft statute, fails for two reasons:

    (1)    A written demand for damages is a statutory condition precedent to a cause of action for civil theft §772.11, Fla.Stat.  The statutory notice was deficient because it includes a joint claim with a unitary settlement figure; the separate demands of each individual claimant require separate notices under the statute. *See*, §772.11, Fla.Stat.

    (2)    The claim is substantively defective. Misappropriation of the Plaintiffs' image is not a crime but is, at most, a civil wrong for which the prescribed penalties are exclusively civil in nature (in the form of common law torts or statutory causes of action providing for recovery of money damages or injunctive relief as a civil remedy).

    E.    Count VII does not state a state law conversion claim because Defendant did not deprive Plaintiffs of any of their property.

    F.    Similarly, Count VIII does not state a cause of action under Florida law for unjust enrichment as the Plaintiffs did not "bestow any benefit" on the Defendants.

## MEMORANDUM OF LAW

I.    **Motion to Dismiss Pursuant to Rule 8(a)(2)**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8 is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007).

The Plaintiffs' Complaint violates Rule 8 because each of the eight counts is repeated fourteen times - one time for each Plaintiff. That is how a relatively simple factual case explodes into 1,438 separate paragraphs spread across 233 pages of text.

The particular form complaint utilized in this litigation has been utilized by these same Plaintiffs, and the same counsel, in other proceedings. It is common, if not universal, for those complaints to be dismissed as a violation of Rule 8 with directions that they be re-plead in consolidated form:

> Under Rule 8(a), Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In violation of this rule, the 343-page complaint mindlessly repeats the same nine counts for each of the sixteen plaintiffs. Each regurgitation of the nine counts spans approximately nineteen pages. Thus, the complaint contains approximately 285 pages of redundancy (the product of nineteen pages and fifteen plaintiffs). Because the same counsel represents the plaintiffs, no apparent need exists for each plaintiff to repeat the nine counts…. [T]he plaintiffs must amend the complaint… to present in a single count the same claim for each plaintiff. If a plaintiff's claim is distinguishable from other plaintiffs' claim because of a factual or legal particularity, the complaint may present the distinguishable claim in a separate count.

Edmondson v. Caliente Resorts, *supra* at *5; *See, also*, Gibson v. White's Place, *supra* at *4. The Plaintiffs should be required to file a simplified Complaint with only one set of counts setting forth the legal basis for each claim.

II.    **Motion to Dismiss for Failure to State a Cause of Action**

   A.    **Standard of Review.**

The general standards for evaluating a motion to dismiss are well known to the Court. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678,

129 S.Ct. 1937, 1949 (2009) *quoting* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct.

1955, 1974 (2007).

> A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is not adequate to survive a Rule 12(b)(6) motion to dismiss. <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1965. Rather, "[t]o survive ... a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949 (*quoting* <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. at 1974). A facially plausible claim must allege facts that are more than merely possible. <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949. Factual allegations that are "'merely consistent with' a defendant's liability" fall short of being facially plausible. <u>Id.</u> at 678, 129 S.Ct. at 1949 (*quoting* <u>Twombly</u>, 550 U.S. at 557, 127 S.Ct. at 1966). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965.

<u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012).

**B.      <u>This Claim Sounds in Copyright and is not Cognizable as a Claim under the Lanham Act.</u>**

Plaintiffs assert a claim under the Lanham Act in Counts I (False Advertising) and II (False Endorsement) of the Complaint. The Supreme Court has warned that "in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 34 (2003). The Plaintiffs do not claim that Defendants violated their copyright to certain photographs – but they should have. Distilled down to its essence, Plaintiff claim is neatly encapsulated in paragraph 58 of the Complaint (Doc. 1 at 11):

> As set forth below, each Plaintiff's image, likeness and/or identity has been misappropriated and intentionally altered by or at the direction of the Defendants.

Each of the individual Plaintiffs then alleges an identical statement to the effect that Defendants wrongfully made use of a photograph for their own purposes:

> Taylor's image, likeness and/or identify are depicted in at least one photograph, enclosed as Exhibit "A" to the Complaint, which has been used at least three times and altered to create the false perception that Taylor has consented or agreed to promote, advertise, market and/or endorse Trapeze's events to benefit Defendants' commercial interests…

(Doc. 1 at 13, ¶64). The right which they claim was invaded is wholly tied to the photographs attached as Exhibits to the Complaint and not to any independent image or likeness.[1]

A review of the photographs attached to the Complaint (Doc. 1-1 through 1-14) shows Plaintiffs are not named in any of the images and there is no express statement that the individuals – whoever they may be – endorse the Defendants' club, use their services, or are members or patrons of those social organizations. In short, there is no "persona" involved; merely an attractive, but ultimately anonymous face. Plaintiffs' Complaint boils down to an objection to the use of a particular photograph in an advertising campaign and those issues are necessarily resolved under copyright law.

A photograph is within the definition of the subject matter of copyright, specifically, "pictorial, graphic, and sculptural works." 17 U.S.C. §102(a)(5). Indeed, photographs are specifically included as part of the statutory definition of a "pictorial work" *See*, 17 U.S.C.A.

---

[1]   Attachments to a complaint are a part thereof for all purposes. *See*, Rule 10(c), Fed.R.Civ.P. ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016); *See, also* Jordan v. Miami-Dade County, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006) ("Exhibits attached to a Complaint are properly considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion.").

§101 ("'Pictorial, graphic, and sculptural works' include… photographs, prints and art reproductions…"); *See, also,* Maloney v. T3Media, Inc., 94 F. Supp. 3d 1128, 1136 (C.D. Cal. 2015) ("The images to which Plaintiffs refer are photographs, and photographs that meet the Act's originality requirement fall within the subject matter of copyright."). Copyright lies at the heart of this litigation regardless of how Plaintiffs frame their causes of action.

The Lanham Act is simply not the correct vehicle for Plaintiffs' claims, and this "disconnect" for a plaintiff seeking redress for the unauthorized use of his or her likeness is apparent from the face of the statute. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any … symbol, or device ... or any false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which -
>
> (A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

There is no mention of a person's likeness in the statute and there is no indication that alleged "commercial misappropriation" of a person in a photograph is actionable. There is a strong line of cases making this very distinction and requiring that claims based on an image must proceed as a copyright claim. Of these, the Middle District's decision in Barn Light Elec. Co., LLC v. Barnlight Originals, Inc., WL 7135076, at *9 (M.D. Fla. 2016) is one of the most recent and comprehensive. For that reason Defendants will indulge in a lengthy quote:

The Supreme Court's interpretation of "origin" in <u>Dastar</u> was intended to distinguish Copyright Act claims from Lanham Act claims. The Court stated that Lanham Act claims "were not designed to protect originality or creativity" because those rights are protected by the Copyright Act. <u>Id.</u> at 37. Permitting Lanham Act claims to cover things other than tangible goods "would be akin to finding that [Section 1125(a)(1)(A)] created a species of perpetual patent and copyright, which Congress may not do." <u>Id.</u>

Other courts have applied <u>Dastar</u>'s reasoning to find that Lanham Act claims involving the unaccredited use of another's photographs in the connection with the sale of goods or services must be pursued as copyright claims. <u>*See, e.g.*</u>, <u>Photographic Illustrators Co. v. Orgill, Inc.</u>, 118 F. Supp. 3d 398, 410 (D. Mass. 2015) (no false designation of origin claim where distributor of light bulbs used copyrighted photo of product on eBay sales page without attribution to copyright owner; such claim was cognizable under the Copyright Act); <u>Quadratec, Inc. v. Turn 5, Inc.</u>, No. CIV.A. 13–6384, 2015 WL 4876314, at *8 (E.D. Pa. Aug. 13, 2015) (dismissing claim for false designation of origin where defendant used plaintiff's marketing materials, including photographs, to sell the same products in direct competition with plaintiff; holding that "Defendant's rights are protected under the Copyright Act"); <u>Avalos v. IAC/Interactivecorp.</u>, No. 13–CV–8351 (JMF), 2014 WL 5493242, at *3 (S.D.N.Y. Oct. 30, 2014) (no false designation of origin claim where dating websites allegedly used photographs of a model to create fake profiles without consent; plaintiff's claim "attempts to achieve precisely what <u>Dastar</u> prohibits: an end run around copyright law").

Upon review, the Court finds that Hi–Lite's false designation of origin claim is directed to the same conduct that underlies its copyright infringement claims, namely, that BLE used images of Hi–Lite's products on its website and in advertisement in connection with the sale of its own similar products. The Court finds that Hi–Lite's interest in the unauthorized use of its images, if protectable at all, is protectable under the Copyright Act.

Moreover, the only way that Hi–Lite's claim for the unauthorized use of its images by BLE *might* be cognizable as a false designation of origin claim is if the images themselves could constitute "source–identifying mark[s]" of Hi–Lite's products. *See* <u>Dastar</u>, 539 U.S. at 34 (the Lanham Act "prevent[s] competitors from copying 'a source-identifying mark' "). Here, the photographs at issue merely contain depictions of Hi–Lite's light fixtures.

<u>Barn Light Elec. Co., LLC v. Barnlight Originals, Inc.</u>, WL 7135076, at *9 (M.D. Fla. 2016);

*See, also*, <u>Photographic Illustrators Corp. v. Orgill, Inc.</u>, 118 F. Supp. 3d 398, 400 (D. Mass.

2015) (Copyright Act takes priority over Lanham Act where the alleged false designation pertains to the origin of a photograph).[2]

Based on these authorities and a clear reading of the factual allegations contained in the Complaint, it is undeniable that Plaintiffs have chosen an inapplicable federal basis upon which to pursue their claims.

### C.   All of Plaintiffs' State Law Claims are Preempted by the Copyright Act.

With the exception of the Lanham Act counts, all of Plaintiffs' claims are based on state law and are before the Court only through supplemental jurisdiction. However, those state law claims cannot be asserted here because they are expressly preempted. All claims arising from fixed works of authorship come with the scope of the copyright law, regardless of the claimant's choice of forum or reliance on alternate legal theories. Pursuant to 17 U.S.C. §301(a):

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title.

"The intention of Section 301 is to preempt and abolish any rights under the common law or state statutes, that are equivalent to copyright and that extend to works within the Federal Copyright Law." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 130, reprinted in 1976 U.S.C.C.A.N.

---

[2] Defendants are aware of contrary authority allowing a Lanham Act claim in other litigation brought by these Plaintiffs under identical allegations. Defendants are aware of cases involving the same claims and the same Plaintiffs which have held that a Lanham Act claim should survive a motion to dismiss. *See, e.g.*, Gibson v. White's Place, LLC, 2017 WL 4169690 at *2 (M.D. Fla. Sept. 20, 2017). However, those cases are not binding on this Court. Defendants respectfully maintain that the rationale in Barn Light is the correct approach and that the Gibson Court erred.

5659, 5746.; *See, also,* <u>Spear Mktg., Inc. v. BancorpSouth Bank</u>, 791 F.3d 586, 597 (5th Cir. 2015) ("]S]tate law claims based on ideas fixed in tangible media are preempted by §301(a).").

The Eleventh Circuit has adopted a test to determine whether a particular state law claim falls within the scope of the Copyright Act and is thus preempted:

> Section 301 in effect establishes a two-pronged test to be applied in preemption cases. We must decide whether the rights at issue fall within the "subject matter of copyright" set forth in sections 102 and 103 and whether the rights at issue are "equivalent to" the exclusive rights of section 106. <u>Harper & Row, Publishers v. Nation Enters.</u>, 501 F.Supp. 848, 850 (S.D.N.Y.1980).

<u>Crow v. Wainwright</u>, 720 F.2d 1224, 1225-26 (11th Cir. 1983).

Defendants have already shown that the photographs in question are original works reduced to a tangible medium and long-held to be within the copyright laws. As for the various state law claims asserted by Plaintiffs based on the alleged misuse of those photographs, it is apparent that all of them are "equivalent to" actions taken to protect or enforce the right of ownership of those images. That is, the state law claims are simply variants of the protections and remedies afforded by the Copyright Act.

The courts are extremely distrustful of copyright claims masquerading as run-of-the-mill state law claims. In each such case, the courts will ignore the form of the state law claim and instead look at the heart of the claim to determine whether it is "equivalent" to a claim properly brought under the Copyright Act.

All of Plaintiffs' state law theories can be distilled down to a general claim that Defendants misappropriated the images or likeness reflected in the subject photographs. Cases which have evaluated claims for misappropriation of likeness routinely find that they are preempted by the Copyright Act. For instance, in <u>Baltimore Orioles, Inc. v. Major League</u>

<u>Baseball Players Ass'n</u>, 805 F.2d 663 (7th Cir. 1986), baseball players claimed that telecasts of their baseball games were made without the players' consent and that Major League baseball teams misappropriated the players' property rights in their performances by playing the telecasts. The works in which the players claimed rights were the telecasts of the games. The major league organization brought an action seeking declaratory judgement that they had the exclusive rights to the telecasts. The Seventh Circuit applied the conventional two-part test and determined that the clubs' copyright in the telecasts preempted the players' right of publicity claim in their performances:

> Although the Clubs own the copyright to the telecasts of major league baseball games, the Players claim that broadcasts of these games made without their express consent violate their rights to publicity in their performances. For the reasons stated below, we hold that the Clubs' copyright in the telecasts of major league baseball games preempts the Players' rights of publicity in their game-time performances.

<u>Id</u>, at 674.

Similarly, in <u>Ahn v. Midway Mfg. Co.</u>, 965 F. Supp. 1134 (N.D. Ill. 1997), a group of martial artists had their images converted into characters appearing in home video games. The Court found that the images were presented in the context of an original choreographed work which fell within the subject matter of the copyright laws. Accordingly the Copyright Act preempted the martial arts practitioners' claims that their rights of publicity were violated by use of their images in the video games:

> [T]he right of publicity is equivalent to one of the rights in §106 because it is infringed by the act of distributing, performing or preparing derivative works. Thus, plaintiffs' claim is preempted.

Id. at 1138; *See, also*, Daboub v. Gibbons, 42 F.3d 285, 289-90 (5th Cir. 1995) (State law claims that ZZ Top stole the song *Thunderbird* from another band were preempted by the Copyright Act).

Plaintiffs' other causes of action are likewise preempted because all of them are "equivalent" to claims that could be made under the Copyright Act. *See*, All Pro Sports Camp, Inc. v. Walt Disney Co., 727 So. 2d 363, 366 (Fla. 5th DCA 1999) (Plaintiff conceded that the civil theft claim is preempted by the Federal Copyright Act, 17 U.S.C. § 101 *et seq.*); Spear Mktg., Inc. v. BancorpSouth Bank, 791 F.3d 586 (5th Cir. 2015) (State claims of trade secret theft held preempted by the Copyright Act).

**D.     Plaintiffs Fail to State a Cause of Action for Deceptive and Unfair Trade Practices under Chap. 501, Fla.Stat. ("FDUTPA") – Count V**

Florida's Deceptive and Unfair Trade Practices Act is intended to protect consumers against unfair commercial practices. However, the Plaintiffs are not consumers. They did not buy or sell anything in connection with Defendants' business. Instead, their allegations suggest that they are competitors in a common marketplace. (Doc. 1 at 11-48 [Lanham Act claims]).

While the law on this subject is contentious and mixed, the greater weight of opinion holds that Plaintiffs cannot state a cause of action under the facts alleged. Indeed, several of the Plaintiffs, represented by the same attorney appearing in this case, had their FDUTPA claim dismissed in the very recent decision in Gibson v. Resort at Paradise Lakes, *supra*. In addition to being the most recent case to decide this issue, the detailed discussion of FDUTPA is unrivaled in its depth and clarity. For that reason, Defendants' will yield to the Judge's superior analysis of FDUTPA claims and simply quote at length from the opinion:

In 2001, the Florida Legislature amended FDUTPA's standing provision by replacing the word "consumer" with the word "person." Leon v. Tapas & Tintos, Inc., 51 F. Supp. 3d 1290, 1296 (S.D. Fla. 2014). District courts in this Circuit are divided over whether the 2001 amendment extended FDUTPA to non-consumers, and the Eleventh Circuit has yet to resolve this split. *See* Democratic Republic of the Congo v. Air Capital Grp., LLC, 614 Fed. Appx. 460, 468-469 (11th Cir. June 11, 2015) (acknowledging this "interpretive tussle" but declining to resolve it). "Courts have interpreted the 2001 amendment generously, but not consistently." Id.

"One line of cases - the more conservative view - extends FDUTPA protection only to persons who were deceived when buying or selling goods and services." Id. In Kertesz, 635 F. Supp. 2d at 1342, for example, plaintiff sued a website operator who posted lewd photos of the plaintiff without her consent. The court held that plaintiff lacked standing because she was not injured in a market transaction between the parties. Id. at 1350. *See also* Badillo v. Playboy Entm't Grp., Inc., No. 8:04-CV-591-T-30TWM, 2006 WL 785707, at *6 (M.D. Fla. Mar. 28, 2006) (dismissing FDUTPA claim, which alleged that defendant used lewd photos of plaintiffs without consent, because plaintiff failed to establish they were purchasers); Goodbys Creek, LLC v. Arch Ins. Co., No. 3:07-CV-947-J-33HTS, 2008 WL 2950112, at *8 (M.D. Fla. July 31, 2008) (holding "[o]nly consumers may bring private suit under FDUTPA") (citing Fla. Stat. § 501.202); Shibata v. Lim, 133 F. Supp. 2d 1311, 1320-1321 (M.D. Fla. 2000) (noting that Florida courts have interpreted "consumer" to mean an individual or entity that is a "purchaser" of goods or services); Carroll v. Lowes Home Centers, Inc., No. 12-23996-CIV, 2014 WL 1928669, at *3 (S.D. Fla. May 6, 2014) (concluding that "person" applies only to "consumers," including businesses that are consumers); Leon, 51 F. Supp. 3d at 1297 (dismissing FDUTPA claim with prejudice because the plaintiff "cannot be said to be a 'consumer,' as he has not, nor has he alleged to have, engaged in any consumer transaction"); Raimbeault v. Accurate Mach. & Tool, LLC, No. 14-CIV-20136, 2014 WL 5795187, at *7 (S.D. Fla. Oct. 2, 2014) (finding that "only 'consumers' who engage in the 'purchase of goods or services' are 'persons' with standing to pursue FDUTPA claims," and dismissing for failure to allege the "purchase of goods or services from any Defendant"); Portionpac Chem. Corp. v. Sanitech Sys., Inc., 217 F. Supp. 2d 1238, 1253 (M.D. Fla. 2002) (granting summary judgment while noting that under FDUTPA only a "consumer" may recover actual damages for unfair trade practices) (citing Fla. Stat. 501.211(2)).
…

This Court agrees with the recent district court decisions which analyze the legislative history of the amendment and apply a more narrow interpretation of the term "person" under FDUTPA. Indeed, the majority of district courts which have addressed the issue overwhelmingly have favored the narrow interpretation

of the term "person" in section 501.211(2) to mean only "consumers" injured by an unfair or deceptive act when buying or purchasing goods and services. *See e.g.*, Carroll v. Lowes Home Centers, Inc., No. 12-23996-CIV, 2014 WL 1928669, at *3 (S.D. Fla. May 6, 2014) (noting that "[t]he legislative history of the 2001 amendment indicates [that] the Florida Legislature did not intend to expand the FDUTPA to non-consumers."); Taft v. The Dade Cty. Bar Ass'n, Inc., No. 1:15-CV-22072-KMM, 2015 WL 5771811, at *4 (S.D. Fla. Oct. 2, 2015) (finding FDUTPA required Plaintiffs to be consumers and noting that this interpretation is consistent with the statute's legislative history). In examining the purpose of the amendment, the record shows that the amendment was sought to clarify the fact that remedies available to individuals under FDUTPA were also available to businesses. *See* Fla. H.R. Comm. Council for Competitive Commerce, HB 685 (2001) Staff Analysis (Mar. 16, 2001; Apr. 18, 2001) (explaining that the 2001 changes to FDUTPA's provisions for a private right of action were only intended to clarify that the remedies available to individuals are also available to businesses harmed by a violation of FDUTPA); Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC, No. 13-20803-CIV, 2013 WL 1786356, at *1 (S.D. Fla. Apr. 25, 2013) (citing same and noting that "[a]lthough FDUTPA may extend to protect business entities ... 'it has no application to entities complaining of tortious conduct which is not the result of a *consumer transaction.*'"). Accordingly, Plaintiffs, as non-consumers, are not entitled to monetary damages under FDUTPA.

Id, 2017 WL 3421532, at *4–6.

Nowhere in the Complaint do the Plaintiffs allege that they bought or sold any product or service from the Defendants or that they engaged in anything which might be construed as a consumer transaction. The Complaint states that third parties consumers might be confused by the advertisements including the Plaintiffs' images. (*See, e.g.*, Doc. 1 at 16-17, ¶¶91, 92, 93). However, the pleading does not state that the Plaintiffs are themselves consumers. The Complaint clearly casts the parties in the role of commercial competitors:

> 108.   Both Gibson and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

(Doc. 1 at 195, ¶1204. As was true for Gibson's claims in Gibson v. Resort at Paradise Lakes,

neither Gibson, nor her co-Plaintiffs, can state a cause of action in this case under Florida's FDUTPA statute.

**E.      Plaintiffs Fail to State a Cause of Action for Civil Theft - §§772.11, Fla.Stat.**

Plaintiffs' claim for civil theft must fail for two reasons: one procedural and one substantive.

**(1)      Failure to Give Statutory Notice**

The Plaintiffs' civil theft claim is due to be dismissed for failure of a statutory condition precedent to maintaining this action:

> … Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand.

§772.11, Fla.Stat. The case law shows that the statute means what it says. *See, e.g.*, In re Naturally Beautiful Nails, Inc., 262 B.R. 131 (Bankr. M.D. Fla. 2001) (Under Florida law, before action for civil theft is filed, potential plaintiff must first make written demand for payment on defendant and cannot commence suit until 30 days later, in event no payment is made). Plaintiffs attached what purports to be a §772.11 statutory notice as Exhibit "O" to their Amended Complaint. (Doc. 1-15 at 2-17). However, the notice is clearly deficient on its face.

The text of the letter shows that it was written as a joint demand on behalf of all of the Plaintiffs. The letter claims damages ranging from $40,000 to $360,000.00. Those damages, if tripled, would amount to $9,700,000. However, the joint demand does not specify whether Ms. Gibson would settle her claim independently of Ms. Mitcheson or whether either would accept

the stated sum if Ms. Cozzens was not compensated. The notice presents a unitary demand with

no indication that any individual would settle her civil theft claim independently: "Accordingly,

this brings the value of the damages and this demand to $970,000.00." The Plaintiffs did not

suffer a common injury and have not alleged that they can recover jointly for civil theft. Indeed,

the body of the Complaint asserts separate demands for each Plaintiff. The notice tendered is

deficient and does not comply with the statute because it presented a joint demand without

allowing Defendants the ability to pay any of the individual claims individually. As such, the

notice does not comply with §772.11, Fla.Stat.

### (2)    The Substantive Allegations in the Complaint are not Sufficient to Support a Claim for Civil Theft

Section 772.11 of the Florida Statutes creates a cause of action for "civil theft". To

maintain a cause of action under the civil theft statute, A plaintiff must show by "clear and

convincing evidence" an injury caused by the defendant's violation of one or more of the

provisions of the criminal theft laws found in §§812.012-037, Fla.Stat.

> Under Florida law, a cause of action for civil theft "derives from two statutory sources: the criminal section setting forth the elements of theft, and the civil section granting private parties a cause of action for a violation of the criminal section." Ames v. Provident Life and Accident Ins. Co., 942 F.Supp. 551, 560 (S.D.Fla. 1994), aff'd, 86 F.3d 1168 (11th Cir. 1996). To establish a claim for civil theft, Gotta Have It must show that IMG knowingly obtained or used, or endeavored to obtain or to use, Gotta Have It's property with the intent to, either temporarily or permanently, deprive Gotta Have It of a right to the property or a benefit from the property, or appropriate the property to IMG's own use or to the use of any person not entitled to the use of the property. Fla. Stat. § 812.014(1). Further, "it is necessary to show not only that defendant obtained or endeavored to obtain the plaintiff's property, but that he did so with felonious intent to commit theft." Ames, 942 F.Supp. at 560. The burden of proof imposed on Gotta Have It in this regard is a clear and convincing evidence standard. Small Business Admin. v. Echevarria, 864 F.Supp. 1254, 1264 (S.D.Fla. 1994).

Palmer v. Gotta Have it Golf Collectibles, Inc., 106 F. Supp. 2d 1289, 1303 (S.D. Fla. 2000); *See, also*, Howard v. Murray, 184 So.3d 1155 (Fla. 1st DCA 2015) ("To prevail on an action for civil theft, the plaintiff must prove that the defendant (1) knowingly; (2) obtained or used, or endeavored to obtain or use, the plaintiff's property; (3) with felonious intent; (4) to deprive plaintiff of its right to or a benefit from the property or appropriate the property to the defendant's own use or to the use of a person not entitled to the use of the property.").

A fundamental hurdle to Plaintiffs' claim is that the misappropriation of their images is not a crime but is, at most, a civil wrong for which the prescribed penalties are exclusively civil in nature. *See*, §540.08, Fla.Stat. (specifying statutory civil remedies); Cason v. Baskin, 30 So.2d 635, 640 (Fla. 1947) (describing common law civil remedies).

**F.       Plaintiffs Fail to State a Cause of Action For Conversion.**

Plaintiffs have failed to state a claim upon which relief may be granted for unlawful conversion. That is so because the Plaintiffs' factual allegations and legal theory simply does not fit with the elements of the cause of action for conversion:

> Conversion is an unauthorized act that deprives another of his or her property, permanently or for an indefinite period of time. Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd., 450 So.2d 1157, 1160–61 (Fla. 3d DCA 1984). The essence of conversion, however, is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property. Senfeld, 450 So.2d at 1161; *see* Wilson Cypress Co. v. Logan, 120 Fla. 124, 127, 162 So. 489, 490–91 (Fla. 1935) (conversion consists of a taking with intent to exercise ownership inconsistent with owner's right of possession).

Brand v. Old Republic Nat. Title Ins. Co., 797 So. 2d 643, 646 (Fla. 3d DCA 2001)*; See, also*, Mayo v. Allen, 973 So. 2d 1257, 1258 (Fla. 1st DCA 2008) ("It is well settled that a conversion

is an unauthorized act which deprives another of his property permanently or for an indefinite time.").

      At its core a claim for conversion is fundamentally a claim based on possession.

> In Florida, an action for conversion is regarded as a possessory action and the plaintiff must have a present or immediate right of possession of the property in question. Allen v. Universal C.I.T. Credit Corp., 133 So.2d 442 (Fla.1st DCA 1961).

Page v. Matthews, 386 So. 2d 815, 816 (Fla. 5th DCA 1980); *See, also*, Prou v. Giarla, 62 F. Supp. 3d 1365, 1380 (S.D. Fla. 2014) ("To prove a conversion claim, a plaintiff must show "ownership of the subject property and ... that the other party wrongfully asserted dominion over that property.")

      This presents a double problem for the Plaintiffs. The Plaintiffs allege that the Defendants made use of their image, but do not tie this to any exercise of dominion or control over any actual "possession" (i.e. they do not claims that they "were permanently, or for an indefinite time, deprived of property"). More importantly, the Plaintiffs do not allege that they actually own the photographs in question. Without a positive assertion that they have a present right in the subject photographs, Plaintiffs cannot state a cause of action for conversion. *See*, Page v. Matthews, 386 So. 2d 815, 816 (Fla. 5th DCA 1980) ("[T]he plaintiff must have a present or immediate right of possession of the property in question."); *See, also*, Edwards v. Landsman, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011) ("Thus, to state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property.").

While a state law conversion claim can probably be asserted with respect to a particular printed image (for instance, an image that has been framed or mounted), there is no good case law to suggest that conversion can reach the right to make use of an image or to claim damages where the possession does not involve a physical object. Instead, this is the job of copyright law. As we have seen throughout Plaintiffs' Complaint, the claim for conversion associated with the images attached as exhibits is, in reality, a claim for enforcement of rights under copyright law. As such, the claim is preempted by Federal law and this Court lacks subject matter jurisdiction over the conversion claim. *See*, Garrido v. Burger King Corp., 558 So. 2d 79, 82 (Fla. 3d DCA 1990) ("Plaintiff's claims for conversion and theft of the advertising campaign ideas conveyed to Burger King are preempted under section 301(a) of the act because the elements of those claims are equivalent to those protected and thus preempted by the act."); *See, also,* Daboub v. Gibbons, 42 F.3d 285, 289-90 (5th Cir. 1995) (State-law claims, including conversion, were equivalent to cause of action under Copyright Act and were thus preempted by Act. 17 U.S.C.A. § 301(a)).

## G.    Plaintiffs Fail to State a Cause of Action For Unjust Enrichment.

Plaintiffs have failed to state a cause of action for unjust enrichment.

> To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.

Della Ratta, 927 So.2d at 1059; *see also* Hillman Constr. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994). "An action for 'unjust enrichment' exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." Henry M. Butler, Inc. v. Trizec Prop., Inc., 524 So.2d 710, 711 (Fla. 2d DCA 1988).

Golden v. Woodward, 15 So. 3d 664, 670 (Fla. 1st DCA 2009); *See, also*, Grove Isle Ass'n, Inc. v. Grove Isle Associates, LLLP, 137 So. 3d 1081, 1094 (Fla. 3d DCA 2014).

Plaintiffs have failed to allege that they have conferred a benefit on the Defendant and that Defendant was aware of the benefit, and that Defendant voluntarily accepted and retained the benefit. *Compare*, Fito v. Attorney's Title Ins. Fund, Inc., 83 So.3d 755 (Fla. 3d DCA 2011) (Title insurer failed to establish that it conferred a benefit on individual); Am. Safety Ins. Serv., Inc. v. Griggs, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) ("The plaintiffs must show they directly conferred a benefit on the defendants.").

A claim of unjust enrichment associated with the wrongful use of a photographic image (or other work of authorship fixed in a tangible medium) is among the claims which are preempted by the Copyright Act. *See, generally*, I.C. ex rel. Solovsky v. Delta Galil USA, 135 F. Supp. 3d 196 (S.D.N.Y. 2015) (State law claims associated with a T-Shirt design were found to be preempted: "Defendants argue that plaintiff's state law claims for unjust enrichment and quantum meruit are simply recast claims for copyright infringement, and must be dismissed because they are preempted by the Copyright Act. The Court agrees.").

**CONCLUSION:**   The essence of the Plaintiffs' claims is that the Defendants used photographs of each of them for purposes of the Defendants' social media advertising. The models are not identified by name in the images nor is there any express statement that they are affiliated with the Defendants' organizations. Their "personas" remain intact because their appearance in the photographs was, for all intents and purposes, anonymous: they are merely pretty faces of the kind seen in photographs everywhere. If the Plaintiffs have a right of recovery,

it is under the Copyright Act subject to their ability to show that that actually own the copyright to the pictures used. There is no cause of action available to them under the Lanham Act and all of the state law claims are expressly preempted pursuant to 17 U.S.C. §301.

WHEREFORE, Defendants move that the Plaintiffs replead their Complaint to combine their claims in a form consistent with the requirements of Rule 8. The Complaint is also subject to dismissal because the claims are preempted by the Copyright Act and otherwise fail to state a cause of action.

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion has been furnished to LUDMILA KHOMIAK, Esquire [mila@casaslawfirm.com], Brickell Bayview Center, 80 S.W. 8th Street, Suite 2000, Miami, Florida 33130, by E-Mail this 30th day of January, 2018.

*Respectfully submitted,*

BENJAMIN, AARONSON, EDINGER
& PATANZO, P.A.

   /s/  Gary S. Edinger
GARY S. EDINGER, Esquire
Florida Bar No. 0606812
305 N.E. 1st Street
Gainesville, Florida 32601
(352) 338-4440  (Fax) (352) 337-0696
GSEdinger@aol.com

DANIEL R. AARONSON, Esquire
Florida Bar No.: 314579
1 Financial Plaza #1615
Ft. Lauderdale, Florida 33394
(954) 779-1700  (Fax) (954) 779-1771
danaaron@bellsouth.net

*Attorneys for Defendants*